UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLAN S. SILVA                                          CIVIL ACTION

VERSUS                                                  NO. 15-5844

HARTFORD INSURANCE COMPANY                              SECTION: "G"(3)
OF THE MIDWEST

# ORDER

This litigation arises out of Plaintiff Allan Silva's ("Silva") claim for damages he allegedly incurred during an automobile accident.[1] Plaintiff originally filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana.[2] Defendant Hartford Insurance Company of the Midwest ("Hartford") removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. §1332(a).[3] Plaintiff subsequently moved to remand the petition back to state court, arguing that it was untimely removed by Defendant after the 30 day deadline for removal.[4] As stated in this Court's Order on July 20, 2016, the Court found Plaintiff's argument that the Notice of Removal was untimely filed unavailing.[5] However, upon review of Plaintiff's Petition for Damages and Defendant's Notice of Removal, the Court found that it was not facially apparent that the amount in controversy exceeded $75,000.[6] Therefore, the Court ordered the parties to submit evidence regarding the amount in controversy at the time of removal.[7] Having considered the evidence submitted and the briefing of the parties, for the reasons that follow the Court

---

[1] Rec. Doc. 1 at 1–2.

[2] *Id*. at 1.

[3] *Id.*

[4] Rec. Doc. 6 at 1.

[5] Rec. Doc. 9 at 1.

[6] *Id*.

[7] *Id*.

concludes that Defendant has not established by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal. Accordingly, the Court lacks subject matter jurisdiction over the above-captioned matter and hereby remands it to state court.

## I. Background

Plaintiff alleges that on August 24, 2014, he was injured when Defendant Elizabeth Julien "disregarded a red stop light and made a right turn into oncoming traffic while the light was still red," striking Plaintiff on his motorcycle as he passed through the intersection.[8] Plaintiff filed suit against Julien, Julien's insurer, Progressive Paloverde Insurance Company ("Progressive"), and Plaintiff's uninsured motorists' carrier, Hartford, in the Civil District Court for the Parish of Orleans on August 13, 2015.[9] In his Petition for Damages, Plaintiff stated that his damages were "more than $50,000, the amount required for trial by jury."[10] Plaintiff and Defendant Julien are both citizens of Louisiana.[11] Defendants Progressive and Hartford[12] are registered in and have their principal place of business in Indiana.[13]

Defendant Hartford was served on September 3, 2015.[14] On September 18, 2015, Plaintiff entered into a settlement agreement with Defendants Julien and Progressive, and signed a "Full

---

[8] Rec. Doc. 1-3 at 2.

[9] *Id*. at 1.

[10] *Id*. at 5.

[11] *Id*. at 1.

[12] Hartford is Plaintiff's uninsured motorists carrier, not a liability insurer, and therefore does not adopt the citizenship of the insured pursuant to 28 U.S.C. § 1332(c)(1). *See Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 725 (5th Cir. 1974) ("[A]n uninsured motorists policy is not a policy or contract of liability insurance.").

[13] Rec. Doc. 1 at 2.

[14] Rec. Doc. 6-1.

2

Release of All Claims with Indemnity."[15] Hartford filed its Notice of Removal on November 12, 2015, alleging that it did not learn until October 26, 2015, that (1) Plaintiff had settled his case against the other defendants, thereby creating complete diversity between the parties, and (2) the amount in controversy was satisfied.[16]

Plaintiff filed a motion to remand this action to state court on December 10, 2015, arguing the removal was untimely,[17] and Defendant filed an opposition on December 29, 2015.[18] On June 20, 2016, this Court found Plaintiff's timeliness argument with regard to the amount in controversy unavailing, but also noted that it was not facially apparent from Plaintiff's Petition for Damages whether the amount in controversy requirement was met.[19] Thereafter, the Court ordered both parties to submit evidence regarding the amount in controversy at the time of removal on November 12, 2015.[20]

## II. Parties' Arguments

### A. *Defendant's Arguments on Amount in Controversy*

Defendant argues that the amount in controversy may be shown to exceed $75,000 by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount.[21] In particular, Defendant argues that it may offer medical evidence to indicate the type of injuries alleged and then cite cases where

---

[15] Rec. Doc. 6-4.

[16] Rec. Doc. 1.

[17] Rec. Doc. 6.

[18] Rec. Doc. 8.

[19] Rec. Doc. 9 at 9.

[20] *Id*. at 10 (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)).

[21] Rec. Doc. 10 at 1 (citing *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882–83 (5th Cir. 2000)).

Louisiana plaintiffs with the same or similar injuries were awarded damages in excess of $75,000.[22] According to Defendant, once it shows that the amount in controversy exceeds $75,000 by a preponderance of the evidence, the burden shifts to the plaintiff to show to "a legal certainty" that their recovery will not exceed the jurisdictional amount.[23] If Plaintiff makes no such showing, Defendant asserts that removal is proper.[24]

Defendant asserts that the amount in controversy exceeded $75,000 prior to removal on November 12, 2015.[25] Plaintiff's medical records indicate that on January 16, 2015, Plaintiff's treating physician recommended that Plaintiff undergo a right knee arthroscopic medial meniscectomy, a right knee arthroscopic loose body removal, and a right knee arthroscopic chondroplasty.[26] Plaintiff informed Defendant that he allegedly required right knee surgery as a result of the accident on September 18, 2015, prior to removal.[27] Defendant further states that on July 5, 2016, Plaintiff demanded $100,000, the underinsured policy limit, from the Defendant.[28]

Defendant cites two Louisiana state court cases where plaintiffs were awarded in excess of $75,000 for injuries alleged similar to the Plaintiff's claimed injuries here. Defendant asserts that in *Stewart v. Ice*, the Louisiana Fourth Circuit Court of Appeal affirmed an award of $350,000 in general damages for a tear of the medial meniscus, a tear of the medial collateral ligament, and a

---

[22] *Id* (citing *Palmer v. Wal-Mart Stores, Inc.*, No. 09-225-B-M2, 2009 WL 2136513, at *3 (M.D. La. June 16, 2009)).

[23] *Id*. at 2 (citing *Creppel v. Fred's Stores of Tennessee, Inc.*, No. 13-734, 2013 WL 3490927, at *2 (E.D. La. July 10, 2013)).

[24] *Id*.

[25] *Id*. at 3.

[26] *Id* (citing Rec. Doc. 10-2).

[27] *Id*. at 2 (citing Rec. Doc. 10-1).

[28] *Id*.

vertical tear of the posterior horn of the lateral meniscus for which the plaintiff did not have additional surgery.[29] Defendant also points to *Buffinet v. Plaquemines Par. Comm'n Council*,[30] where the Louisiana Fourth Circuit Court of Appeal awarded $85,000 for two arthroscopic surgeries on the knee.[31] Defendant argues that showing that Louisiana courts have awarded more than $75,000 for similar injuries to those suffered by Plaintiff is sufficient to prove by a preponderance of the evidence that the amount in controversy exceeded $75,000.[32]

## B.  *Plaintiff's Arguments on Amount in Controversy*

Plaintiff, though arguing that this matter must be remanded back to state court, states that prior to removal, Plaintiff had provided "ample evidence" to Defendant proving the amount in controversy exceeded $75,000 and had turned over pertinent medical records to Defendant "repeatedly as they became available."[33] Plaintiff asserts that it was Defendant's prior position that Plaintiff had not provided any evidence that the amount in controversy exceeded $75,000 prior to removal on November 12, 2015.[34] However, Plaintiff argues the amount in controversy always exceeded $75,000 based on the necessity and costs of the required knee surgery.[35] Plaintiff asserts that Defendant was notified on September 19, 2015, that Progressive would be tendering its policy

---

[29] *Id*. (citing *Stewart v. Ice*, 07-0871 (La. App. 4 Cir. 4/9/08); 982 So. 2d 928).

[30] The Defendant cites the case as *Bennett v. Watkins*, 645 S. 2d 631 (La. App. 4 Cir. 1994), but appears to have intended to cite *Buffinet v. Plaquemines Par. Comm'n Council*, 93-0840 (La. App. 4 Cir. 7/27/94); 645 So. 2d 631.

[31] Rec. Doc. 10 at 3 (citing *Buffinet v. Plaquemines Par. Comm'n Council*, 93-0840 (La. App. 4 Cir. 7/27/94); 645 So. 2d 631).

[32] *Id*. at 3 (citing *Palmer*, 2009 WL 2136513 at *3).

[33] Rec. Doc. 11 at 1.

[34] *Id*.

[35] *Id*. at 2.

5

limits of $15,000.[36] Plaintiff also alleges that Defendant failed to tender Plaintiff's underinsured policy limits of $100,000 in bad faith after Plaintiff's made a settlement offer on July 5, 2016, and that Defendant is thus liable for a 50 percent penalty under La. R.S. 22:1892.[37]

Finally, Plaintiff points to an Ochsner Medical Center estimate worksheet for Plaintiff's required surgical procedure, dated December 12, 2015, estimating the "total estimated charges" at $88,608.19 and the "total patient estimate amount due" at $34,700.[38] Both costs are broken down into clinic charges, which estimates the costs of each surgical procedure, and charges for using Ochsner's facilities.[39] Plaintiff asserts that the knee injury necessitating this surgery was the result of the car accident at issue in this case and he has been undergoing therapy and treatment for his injuries since September 5, 2014.[40] Thus, Plaintiff argues the amount in controversy is satisfied.[41]

## II. Law and Analysis

### A.   *Legal Standard*

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[42] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[43] "When removal is based on diversity of citizenship, diversity must

---

[36] *Id*.

[37] *Id*.

[38] *Id* (citing Rec. Doc. 11-4). Plaintiff adopts the higher gross charges as the amount in controversy, but does not reference or explain why the lower patient charges estimate is not used.

[39] *See* Rec. Doc. 11-4.

[40] Rec. Doc. 11 at 3.

[41] *Id*. at 2–3.

[42] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[43] 28 U.S.C. § 1332(a)(1).

6

exist at the time of removal."[44] The removing party bears the burden of demonstrating that federal jurisdiction exists by a preponderance of the evidence.[45] Subject matter jurisdiction cannot be waived by the parties' conduct or consent.[46] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[47]

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[48] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[49]  A removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages.[50] When the plaintiff alleges a damages figure in excess of the required amount in controversy, "that amount controls if made in good faith."[51] If the plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal.[52]

---

[44] *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (citing 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (1998 ed.)).

[45] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[46] *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).

[47] 28 U.S.C. § 1447(c).

[48] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[49] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[50] *See Allen*, 63 F.3d at 1335.

[51] *Id*. (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

[52] *Id.*

Nevertheless, Louisiana law ordinarily does not allow a plaintiff to plead a specific amount of damages.[53] When, as here, the plaintiff has alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[54] A defendant satisfies this burden either "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."[55] The defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeded $75,000.[56]

## B.   *Analysis*

Although both parties assert that the amount in controversy exceeded $75,000 at the time of removal on November 12, 2015, the requirement of subject matter jurisdiction cannot be waived by the parties' consent.[57] In the Petition for Damages, Plaintiff alleges that he suffered "severe permanent disabling injur[ies] including damages to his right knee including ruptured muscles requiring surgery."[58] Plaintiff lists twelve separate items of damages, including past and future pain and suffering, past and future mental anguish, permanent disability, past and future medical and surgical expenses, prescriptive medications, physical therapy, past and future loss of wages,

---

[53] *See* La. Code Civ. P. art. 893.

[54] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also Simon v. Wal-Mart Stores, Inc.*, 193 F.3d at 848, 850 (5th Cir. 1999); *Allen*, 63 F.3d at 1335.

[55] *Simon*, 193 F.3d at 850 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999)); *see also Allen*, 63 F.3d at 1335.

[56] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[57] *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

[58] Rec. Doc. 1-3 at 3.

8

and inconvenience and loss of use of vehicle.[59] Plaintiff further "states his damages are more than $50,000."[60] Furthermore, in its Notice of Removal, Defendant alleges that it "became aware via phone conversation with Plaintiff's counsel on October 26, 2015 that the amount in controversy exceeds $75,000.00, exclusive of interests and costs."[61] However, on July 20, 2016, the Court found that, on these facts, it was not facially apparent that the amount in controversy was met.[62]

Pursuant to this Court's Order,[63] Plaintiff and Defendant have offered additional evidence and arguments asserting that the amount in controversy exceeded $75,000. Defendant, who bears the burden to prove by a preponderance of the evidence that removal was proper, offers two arguments. First, Defendant asserts that Plaintiff informed Defendant prior to removal that Plaintiff would require a right knee arthroscopic medial meniscectomy, a right knee arthroscopic loose body removal, and a right knee arthroscopic chondroplasty as a result of the accident.[64] However, this information, without more, does not establish that the amount in controversy exceeded $75,000. Defendant has merely restated what was on the face of Plaintiff's petition with slightly more detail as to what type of surgery is required,[65] but Defendant does not quantify the present and future costs of such an operation or provide any evidence supporting its valuation that, at the time of removal, the amount in controversy exceeded $75,000. As the Fifth Circuit has held,

---

[59] *Id*. at 4–5.

[60] *Id*. at 5.

[61] Rec. Doc. 1 at 3.

[62] Rec. Doc. 9 at 1.

[63] *Id*. at 10.

[64] Rec. Doc. 10 at 1 (citing Rec. Doc. 10-1).

[65] *See* Rec. Doc. 1-3 at 1 (stating that Plaintiff suffered "severe permanent disabling injur[ies] including damages to his right knee including ruptured muscles requiring surgery.").

9

"[c]onclusional allegations are insufficient to establish jurisdiction."[66] As another district judge in the Eastern District of Louisiana found, "[t]he fact that [Plaintiff's] doctor has recommended surgery does not, in itself, establish that the claim exceeds $75,000.00, even in a day of spiraling health care costs."[67] Defendant produces no evidence that existed at the time of removal of any costs associated with these injuries, such as past, current, or future medical expenses, or past, current, or future damages. Moreover, Defendant states that Plaintiff demanded the full $100,000 underinsured policy limits as a result of the recommended surgery,[68] but that demand was sent on July 5, 2016, well after removal on November 12, 2015. As stated *supra*, subject matter jurisdiction must be established at the time of removal.[69]

Second, although Defendant points to two Louisiana Fourth Circuit cases where damages exceeding $75,000 were awarded, the Defendant "must do more than merely show that plaintiff could recover more than the jurisdictional amount" to satisfy its burden.[70] Moreover, the cases cited by Defendant are distinguishable from the facts at issue here. In *Stewart v. Ice*, the Louisiana Fourth Circuit Court of Appeal affirmed the lower court's damages award of $350,000 after hearing evidence of the plaintiff's numerous physical impairments he endured for five years after his car accident.[71] In that case, the plaintiff's knee injuries included "a Baker's cyst, patellar tendonitis, complex tear of the posterior horn of the medial meniscus, partial tear of the medial

---

[66] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998).

[67] *Anderson v. Pep Boys-Manny, Moe & Jack, Inc.*, No. 08-3861, 2009 WL 1269069, at *1 (E.D. La. May 6, 2009) (Engelhardt, J.).

[68] Rec. Doc. 10 at 1.

[69] *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (citing 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (1998 ed.)).

[70] *Bourg v. Fireman's Fund Ins. Co.*, No. 99-1066, 1999 WL 335636, at *1 (E.D. La. May 24, 1999) (Clement, J.) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995)).

[71] 07-0871 (La. App. 4 Cir. 4/9/08); 982 So. 2d 928, 932–33.

collateral ligament, and a vertical tear of the posterior horn of the lateral meniscus [that] restrict his activities and prevent him from squatting, kneeling, crawling or climbing."[72] The plaintiff also presented expert testimony and argued that he was unable to carry anything greater than five to eight pounds, could not perform his job any longer, and, without surgery, would experience a permanent impairment rating of 18 to 25 percent.[73] Additionally, the plaintiff only recovered $27,500 for the costs of his arthroscopic surgery and $6,311 for past medical expenses.[74] In this case, neither party has presented specific evidence of such severe and prolonged general damages beyond mere speculation, nor has either party presented evidence suggesting what the expenses incurred by Plaintiff at the time of removal were and if they approached the same magnitude as the plaintiff in *Stewart v. Ice*. Likewise, the second case Defendant relies on, *Buffinet v. Plaquemines Par. Comm'n Council*,[75] is also distinguishable because the plaintiff underwent two surgeries: the first arthroscopic surgery addressed the aggravation of a preexisting condition of chondromalacia in 1988, and the second replaced the anterior cruciate ligament in 1989.[76] Here, Plaintiff has asserted the need for only one surgery to remedy his injuries.

Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not

---

[72] *Id*.

[73] *Id*.

[74] *Id*. at 930.

[75] 93-0840 (La. App. 4 Cir. 7/27/94); 645 So. 2d 631. As stated *supra,* Defendant cites this case as *Bennett v. Watkins*, 645 S. 2d 631 (La. App. 4 Cir. 1994).

[76] *Buffinet v. Plaquemines Par. Comm'n Council*, 93-0840 (La. App. 4 Cir. 7/27/94); 645 So. 2d 631, 639.

sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts *in this case* that establish that the actual amount in controversy exceeded $75,000.[77] Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal.[78] This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with "similar" injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement.[79] Thus, considering all of the evidence presented, Defendant has failed to demonstrate by a preponderance of the evidence that Plaintiff's claims, if proven, would be worth an amount in excess of $75,000.

Though Plaintiff has moved to remand the case back to state court and does not bear the burden to prove jurisdiction, he offers additional evidence and arguments in support of finding that the amount in controversy exceeded $75,000 at the time of removal. First, Plaintiff states that Defendant knew on September 19, 2015, that Progressive would be tendering its policy limits of $15,000,[80] but that is insufficient to show the amount in controversy against Defendant exceeded $75,000. Second, Plaintiff states he has undergone therapy and treatment for his injuries for nearly two years,[81] but does not provide any evidence that existed at the time of removal as to the cost of

---

[77] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[78] *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999) (stating that "we must evaluate the facts supporting jurisdiction as of the time of removal and therefore may not consider the entire post-removal record").

[79] *Compare Stewart v. Ice*, 07-0871 (La. App. 4 Cir. 4/9/08); 982 So. 2d 928, 932–33 (awarding $350,000 in general damages and $27,500 for arthroscopic knee surgery) *with Herzog v. Fabacher*, 01-432 (La. App. 5 Cir. 10/17/01), 800 So. 2d 997, 1001 ("Surveying awards for the injuries individually, we find cases with similar leg injuries with awards between $35,000 [to] $60,000[] for knee injuries requiring surgery.").

[80] Rec. Doc. 11 at 2.

[81] *Id*. at 3.

these procedures. Plaintiff does point to an "Estimate Worksheet" from Ochsner Medical Center stating that the costs of Plaintiff's knee surgery will total $88,608.19.[82] However, this document was dated December 4, 2015, *after* Defendant's Notice of Removal was filed on November 12, 2015, and includes the costs of surgery and facility charges not evidenced in the record prior to removal.[83] As the Fifth Circuit has held, "jurisdictional facts must be judged as of the time the complaint is filed,"[84] and all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction" in favor of remand.[85] Post-removal affidavits may be used when the jurisdictional amount is ambiguous on the face of Plaintiff's petition, but only to clarify jurisdictional facts as of the time of removal.[86] A court may not consider the entire post-removal record in making its jurisdictional determination.[87]

Fourth and finally, Plaintiff alleges that the amount in controversy is met because the Defendant is obligated to pay a $100,000 insurance policy and is subject to pay a 50 percent penalty for failing to pay out the policy in bad faith.[88] However, no such allegation appears in the Plaintiff's

---

[82] *Id* (citing Rec. Doc. 11-4).

[83] *See* Rec. Doc. 11-4. Additionally, Plaintiff does not mention or explain the second, lower "Total Patient Estimate Amount" found on the document of $34,700.

[84] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[85] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[86] *Id*. at 154 & n.18 (holding that it was error as a matter of law for a district court to consider a counterclaim and a state court petition to test the amount in controversy when both pleadings were not filed until after the original complaint).

[87] *See Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999) (stating that "we must evaluate the facts supporting jurisdiction as of the time of removal and therefore may not consider the entire post-removal record").

[88] Rec. Doc. 11 at 2.

Petition for Damages[89] or Defendant's Notice of Removal,[90] and the claim does not appear to have been asserted until Plaintiff's July 5, 2016, settlement demand letter.[91] As stated *supra*, the Court will only consider jurisdictional facts that existed at the time of removal when determining the amount in controversy. Therefore, Plaintiff's additional evidence and arguments are insufficient to form the basis for subject matter jurisdiction at the time of removal.

### III. Conclusion

Based on the foregoing, the Court finds that Defendant has failed to demonstrate by a preponderance of the evidence that Plaintiff's claims at the time of removal, if proven, would be worth an amount in excess of $75,000. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED** and the above-captioned matter is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

**NEW ORLEANS, LOUISIANA,** this 29th day of August, 2016.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[89] *See* Rec. Doc. 1-3.

[90] *See* Rec. Doc. 1.

[91] *See* Rec. Doc. 10-2.